24-1267

IN THE

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

◆◆◆

**EAST KENTUCKY POWER COOPERATIVE, INC.**

*PETITIONER*

— v. —

**UNITED STATES ENVIRONMNETAL PROTECTION AGENCY
and MICHAEL S. REGAN, Administrator, United States
Environmental Protection Agency**

*RESPONDENTS*

(Consolidated with 24-1200, 24-1269, 24-1274, 24-1275, and 24-1276)

Petition for Review of a Final Agency Action of the
United States Environmental Protection Agency

**PETITIONER'S REPLY IN SUPPORT OF MOTION FOR STAY**

S. Chad Meredith
G. Luke Burton
SQUIRE PATTON BOGGS (US) LLP
201 E. Fourth St., Suite 1900
Cincinnati, Ohio 45202
Telephone: +1 513 361 1200
Facsimile: +1 513 361 1201
chad.meredith@squirepb.com
luke.burton@squirepb.com

*Counsel for Petitioner*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...............................................................i

TABLE OF AUTHORITIES......................................................ii

INTRODUCTION.....................................................................1

I.      EKPC is likely to succeed on the merits.......................................1

    A.      The Rule exceeds EPA's authority under RCRA...................1

    B.      The Rule is impermissibly retroactive....................................6

    C.      The Rule is inconsistent with the WIIN Act. ........................8

    D.      The Rule violates the Commerce Clause. ............................10

    E.      The Rule is arbitrary and capricious. ..................................11

II.     EKPC will be irreparably harmed absent a stay. ........................12

III.    The balance of harms and the public interest favor a stay...........13

CONCLUSION ........................................................................14

CERTIFICATE OF COMPLIANCE.........................................15

RULE 26.1 DISCLOSURE STATEMENT...............................16

CERTIFICATE OF SERVICE.................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Gonzales v. Raich,*
    545 U.S. 1 (2005)................................................................ 11

*Landgraf v. USI Film Prods.,*
    511 U.S. 244 (1994)............................................................ 6, 7

*Loper Bright Enters. v. Raimondo,*
    144 S. Ct. 2244 (2024)........................................................ 7

*Loretto v. Teleprompter Manhattan CATV Corp.,*
    458 U.S. 419 (1982)............................................................ 13

*Ohio v. EPA,*
    144 S. Ct. 2040 (2024)........................................................ 12

*United States v. Lopez,*
    514 U.S. 549 (1995)............................................................ 10, 11

*United States v. Morrison,*
    529 U.S. 598 (2000)............................................................ 11

*Utility Solid Waste Activities Grp. v. EPA,*
    901 F.3d 414 (D.C. Cir. 2018) ........................................ 2, 6, 8

**Statutes**

42 U.S.C. § 6903(14) ........................................................ 1, 2, 3, 8

42 U.S.C. § 6944(a) .......................................................... 1, 3

42 U.S.C. § 6945(d) .......................................................... 8, 9, 12

42 U.S.C. § 6973(a) .......................................................... 5

**Other Authorities**

89 Fed. Reg. 38950-01 ...................................................... 2, 5

EPA, *Human and Ecological Risk Assessment of Coal Combustion Residuals*, RIN 2050-AE81 (Dec. 2014) ............................ 4

*Risk Assessment of Coal Combustion Residuals: Legacy Impoundments and CCR Management Units*, EPA-HQ-OLEM-2020-0107-1065 (Apr. 2024) .................................. 4, 5

U.S. Const. art. I ................................................................................ 10

# **INTRODUCTION**

Neither EPA nor the Intervenors refute EKPC's arguments. Most notably, they fail to show that "solid waste is disposed of" at sites like EKPC's Dale Station, where the CCR was removed under State government oversight years ago. 42 U.S.C. § 6903(14). They also fail to provide evidence that such sites pose a "reasonable probability of adverse effects on health or the environment." *Id.* § 6944(a). And they fail to explain why the Rule should not be considered retroactive when it adds new obligations to closure transactions that were completed years ago. In short, EKPC is likely to succeed on the merits. Coupled with the unrecoverable expenses EKPC will incur in the absence of a stay and the consideration of the relevant equities and interests, this compels a stay pending judicial review.

# **ARGUMENT**

## I.    **EKPC is likely to succeed on the merits.**

### A.    **The Rule exceeds EPA's authority under RCRA.**

EPA acknowledges that its authority extends only to "facilities where solid waste is present." EPA Resp. at 7. So far so good. But then it argues that it nevertheless may regulate sites that no longer contain

CCR simply because it *assumes* they contain leachate.  *Id.* at 7–8.  This argument ignores the plain language of RCRA.

The plain language of the statute is paramount.  As EPA concedes, its RCRA rulemaking authority does not extend beyond facilities "where solid waste is disposed of."  42 U.S.C. § 6903(14).  Once solid waste has been removed from a site, it is no longer subject to regulation under RCRA.  "A garbage dump is a garbage dump until the deposited garbage is gone."  *Utility Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 441 (D.C. Cir. 2018) ("*USWAG*").  And the "garbage" at issue here—*i.e.*, CCR—has been gone from EKPC's former Dale Station impoundments for years.  This is dispositive.

Undeterred, EPA points to leachate.[1]  But EPA does not actually assert that leachate is, as a matter of fact, present at facilities like the former Dale Station impoundments, where all CCR was removed years ago under State oversight.  Instead, EPA speculates that leachate *might*

---

[1] Relying on leachate makes no sense.  EPA concedes in the preamble to the Rule that leachate is not CCR.  *See* 89 Fed. Reg. at 38,999.  Thus, EPA is in the head-spinning position of trying to use something that is admittedly *not* CCR to justify applying a CCR regulation to sites that do not contain CCR.  Plus, EKPC does not concede that leachate is a "solid waste" within the meaning of RCRA.

be present at such sites.  EPA's entire argument is built on a series of speculations based on its suppositions about leachate generally.  It says:

- "legacy impoundments are *more likely* to have leaked … ,"

- "solid waste … is *expected* to remain at sites like East Kentucky's Dale Station,"

- "[t]he record shows that removal of coal ash is *unlikely* to address contaminants that leaked into the soil … ,"

- the removal of coal ash based on visual inspection is "*unlikely*" to "address all soil affected by leachate,"

- "leachate *would normally* remain [at sites like EKPC's Dale Station]."

Resp. at 5, 8, 10, 11 (emphases added).  Conspicuously absent is any affirmative statement—much less *evidence*—that former impoundments like those at the Dale Station do, in fact, still contain solid waste.  That flouts RCRA's plain language, which authorizes EPA to regulate sites "where solid waste *is* disposed of," 42 U.S.C. § 6903(14) (emphasis added), not sites where solid waste "is *or might be* disposed of."

Also absent is any evidence that former impoundments like those at the Dale Station pose any "reasonable probability of adverse effects on health or the environment from disposal of solid waste."  *Id.* § 6944(a).  This is another limitation on EPA's rulemaking authority.

3

That is, RCRA does not allow EPA to regulate sites that do not pose such a probability of adverse effects, even if they contain solid waste. *Id.* And EPA has no evidence that sites like the former impoundments at the Dale Station pose any such risk. Neither the 2024 nor the 2014 risk assessment supports EPA. *See* EPA, *Risk Assessment of Coal Combustion Residuals: Legacy Impoundments and CCR Management Units*, EPA-HQ-OLEM-2020-0107-1065 (Apr. 2024) ("2024 Risk Assessment"); EPA, *Human and Ecological Risk Assessment of Coal Combustion Residuals*, RIN 2050-AE81 (Dec. 2014) ("2014 Risk Assessment"). Those risk assessments model risk based on impoundments that still contain CCR and a hydraulic head. 2024 Risk Assessment at 2-4; 2014 Risk Assessment at ES-5. Thus, they are irrelevant when it comes to establishing EPA's authority over former impoundments that no longer contain CCR or liquids. Like its arguments on the continued presence of solid waste, EPA's arguments on the reasonable probability of adverse effects are based on nothing but speculation.

EPA's arguments are also inconsistent with RCRA's broader structure. In contrast to EPA's rulemaking authority, RCRA gives EPA

limited authority to seek injunctive relief "upon receipt of evidence that the *past or present* … disposal of any solid waste … may present an imminent and substantial endangerment to health or the environment." *Id.* § 6973(a).   This provision shows that Congress knows how to authorize action regarding *past* disposal when it truly wants to do so. That such language appears nowhere in connection with EPA's rulemaking authority demonstrates that EPA is not authorized to promulgate rules addressing *past* waste disposal.  And the requirement that EPA initiate lawsuits only after receiving "evidence" shows that Congress meant for any actions addressing past disposal to address only narrow, particularized concerns about individual sites.  This rules out the use of rulemaking in such situations.

Obviously understanding RCRA's limits, EPA argues that "the Rule regulates prospectively based on the current presence of solid waste that 'is disposed of.'" Resp. at 13.  But that is plainly not what the Rule does.  By its own terms, it regulates based on the presence of CCR as of *October 19, 2015*—even if that CCR is no longer present, as in the case of former impoundments like the ones at the Dale Station.

89 Fed. Reg. at 39,100.  EPA cannot change that through its arguments in this Court.

One final point:  The Intervenors simply argue that the Rule is good policy.  Good policy or not, the Rule must be within EPA's authority under RCRA.  It is not.

## B.    The Rule is impermissibly retroactive.

The parties apparently agree that RCRA does not authorize retroactive regulations.  But EPA and the Intervenors assert that the Rule is not actually retroactive.  The truth is that the Rule imposes new obligations based on things that happened *nearly a decade ago*.  It is retroactive.

The Intervenors say *USWAG* addressed this by holding that EPA can regulate inactive impoundments.  But unlike this case, the question in *USWAG* was whether EPA could regulate impoundments that were inactive but *still contained* CCR.  *See USWAG*, 901 F.3d at 439.

For its part, EPA first argues that the Rule cannot be retroactive because it "imposes only future requirements with future compliance dates."  Resp. at 13.  That is not the test for retroactivity.  After all, a regulation cannot exactly require one to travel through time and meet a

6

*past* compliance date. A retroactive rule is one that "impair[s] rights a party possessed when he acted, increase[s] a party's liability for past conduct, or impose[s] new duties with respect to transactions already completed." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994). The central inquiry is whether the new regulation "attaches new legal consequences to events completed before its enactment." *Id.* at 270. And the Rule does that.

Recall that EKPC closed the former Dale Station impoundments under a plan approved and supervised by the State government. When EKPC completed the closure in 2019, Kentucky certified that EKPC had no further obligations for those impoundments. No EPA obligations applied to them. Thus, the transaction was completed. Now, however, EPA desires to impose new duties with respect to the closure of those former impoundments. This is the very definition of retroactivity. *See Landgraf*, 511 U.S. at 269–70.

EPA also contends that the transaction in question was never actually complete because it thinks there might still be solid waste— *i.e.*, leachate—at the former Dale Station impoundments. In other words, EPA's position is that it—and only it—gets to decide when a

transaction is completed.  But a transaction does not fail to complete just because EPA says so.  And it is the Court's role—not EPA's—to decide questions of law.  *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024).

EPA similarly tries an end run around its retroactivity problem by arguing that "if East Kentucky is correct that its closure at Dale Station was 'clean,' … then all it needs to do is show that."  Resp. at 15.  This has nothing to do with the test for retroactivity.  Worse still, it evinces a troubling guilty-until-proven-innocent approach that is inconsistent with RCRA.  EKPC should not have to go to the expense and burden of disproving the presence of solid waste, especially when it closed its facilities years ago under State government oversight.

## C.   The Rule is inconsistent with the WIIN Act.

In *USWAG*, EPA argued that the WIIN Act "makes 'fundamental changes to RCRA Subtitle D as applied specifically to [Coal Residuals].'" *USWAG*, 901 F.3d at 426 (quoting EPA WIIN Br. at 4, 6, 8).  EPA further recognized that the WIIN Act was designed to create "site-specific solutions to protecting the environment."  EPA WIIN Br., No. 15-1219, 2017 WL 11534804, at *10 (Oct. 11, 2017).  And it

acknowledged that the 2015 CCR Rule "does not necessarily reflect this revised legislative approach." *Id.* Now EPA disclaims any fundamental changes to RCRA and posits that one-size-fits-all regulations like the Rule are entirely consistent with the WIIN Act. EPA was right the first time. Congress plainly directed EPA to move away from such a regulatory regime in favor of a site-specific permitting process.

To be sure, the WIIN Act leaves room for rules. But they play a temporary, gap-filling role until a permitting program is available, and they provide the baseline level of environmental protection that permitting programs must meet. *See* 42 U.S.C. § 6945(d).

Not just any rule will do, however. Instead, it must be the 2015 CCR Rule or a "successor regulation." *Id.* EPA and the Intervenors argue that the Rule is a "successor rule" because it came after the 2015 CCR Rule. Their sole focus on *when* the Rule was promulgated is the wrong analysis.

The term "successor regulation" must be read in reference to the 2015 CCR Rule (which Congress specifically incorporated into the WIIN Act) and in light of the WIIN Act's overall shift away from one-size-fits-all rulemaking. The most natural interpretation is that Congress

authorized subsequent rules that would regulate within the same bounds as the 2015 CCR Rule—*i.e.*, within the categories of CCR units regulated by the 2015 Rule.  There is no reason to believe Congress authorized EPA to create and regulate entirely new categories of CCR units like CCRMUs, or to regulate legacy impoundments that no longer contain CCR.  Congress clearly did not give EPA such a blank check. The Rule is not a "successor regulation."

### D.   The Rule violates the Commerce Clause.

The federal government is one of limited and enumerated powers. *See* U.S. Const. art. I; *see also United States v. Lopez*, 514 U.S. 549, 566 (1995).  So its power must end somewhere.  But if EPA can regulate any plot of land simply because it thinks there *might* be solid waste disposed of there—no matter whether that solid waste has moved in interstate commerce or affects the channels or instrumentalities of interstate commerce—then there would effectively be no end to EPA's power.  That cannot be true.  *See Lopez*, 514 U.S. at 566.

EPA and the Intervenors argue that the Rule is constitutional because it substantially affects interstate commerce.  Setting aside the dubiousness of the existing "substantial effects" test, the Rule fails even

under current precedent because that test requires *economic* activity that substantially affects interstate commerce. *See Gonzales v. Raich*, 545 U.S. 1, 23–26 (2005); *United States v. Morrison*, 529 U.S. 598, 610 (2000); *Lopez*, 514 U.S. at 559–61. Though the disposal of solid waste can be an economic activity, it is not inherently so, and there has been no showing that EKPC's past disposal of CCR in the former Dale Station impoundments was an economic activity. Moreover, there is no activity of any kind—economic or otherwise—occurring at sites like the former Dale Station impoundments.

### E.    The Rule is arbitrary and capricious.

EKPC's stay motion argued that the Rule is arbitrary and capricious for four reasons, none of which EPA or the Intervenors successfully refute:

1.    The Rule arbitrarily negates past investment made in reliance on the prior state of the law. EPA and the Intervenors disagree, arguing that the Rule simply requires EKPC to add groundwater-monitoring systems to its facilities. But if EKPC had known that it would have to install such systems, it would have

11

performed its grading and earth-moving work differently.  Purvis Decl.
¶33.  Now it will have to re-do much of that work.

2.    EPA has still provided no evidence of any "reasonable probability" of harm from former impoundments—like those at the Dale Station—that have been closed by removal of all CCR under State government oversight.  It is arbitrary and capricious to regulate such sites without evidence of harm.

3.    EPA makes no attempt whatsoever to explain why it proceeded with the one-size-fits-all Rule rather than creating the site-specific permitting program required by the WIIN Act.

4.    Neither EPA nor the Intervenors explain why the Rule imposes fewer burdens on owners and operators who failed to maintain adequate records.  Nor could they since there is no good reason why all owners and operators should not be evaluated based on the *current* state of their impoundments.

## II.    EKPC will be irreparably harmed absent a stay.

EKPC has provided evidence showing that its compliance with the Rule is likely to cost $16.5 million.  These costs will be unrecoverable, and therefore constitute irreparable harm.  *See Ohio v. EPA*, 144 S. Ct.

2040, 2053 (2024). Likewise, compliance will force EKPC to alter its land permanently, which cannot be undone and is therefore irreparable. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982).

EPA's only response is to chide EKPC for having a lower initial estimate of compliance costs. The amount has increased because EKPC's estimates of its compliance costs have grown as it has delved deeper into the complexities of the Rule and the burdens it will impose. And EPA is incorrect in speculating that the estimate must be so high because EKPC is assuming the site is contaminated and will have to undergo corrective action.

## III.   The balance of harms and the public interest favor a stay.

EPA and the Intervenors say the public interest and the equities weigh against a stay because the Rule will produce environmental and health benefits. But they again fail to cite evidence showing that former impoundments that were clean-closed by removal of the CCR— like the former impoundments at EKPC's Dale Station—pose any risk of harm. A stay will not harm EPA, the Intervenors, or the general public, but it will protect EKPC from irreparable injuries, and it will

13

ultimately protect the end-users of the electricity EKPC produces from incurring unnecessarily higher energy costs.

## **CONCLUSION**

The Court should stay the Rule pending judicial review.

Dated: September 27, 2024             Respectfully submitted,

<u>*/s/ S. Chad Meredith*</u>
S. Chad Meredith
G. Luke Burton
SQUIRE PATTON BOGGS (US) LLP
201 E. Fourth St., Suite 1900
Cincinnati, Ohio 45202
Telephone:  +1 513 361 1200
Facsimile:  +1 513 361 1201
E-mail:  chad.meredith@squirepb.com
          luke.burton@squirepb.com

Counsel for Petitioner

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify the following:

1.      This reply complies with the type-volume limitations of Fed. R. App. P. 27(d)(2)(C) because it contains 2,586 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2.      This reply complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E) and Fed. R. App. P. 32(a)(5)-(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Century Schoolbook 14-point font.

*/s/ S. Chad Meredith*
S. Chad Meredith

## RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, and Rule 26.1 of the Circuit Rules of the United States Court of Appeals for the District of Columbia Circuit, Petitioner East Kentucky Power Cooperative, Inc. ("East Kentucky"), submits the following statement:

East Kentucky is a corporation organized under the laws of the Commonwealth of Kentucky, and its corporate headquarters are located at 4775 Lexington Road, Winchester, Kentucky 40392. East Kentucky is owned by 16 rural electric cooperatives: Big Sandy Rural Electric Cooperative, Blue Grass Energy Cooperative, Clark Energy Cooperative, Cumberland Valley Electric, Farmers Rural Electric Cooperative, Fleming-Mason Energy Cooperative, Grayson Rural Electric Cooperative, Inter-County Energy, Jackson Energy Cooperative, Licking Valley Rural Electric Cooperative, Nolin Rural Electric Cooperative, Owen Rural Electric Cooperative, Salt River Electric Cooperative, Shelby Energy Cooperative, South Kentucky Rural Electric Cooperative, and Taylor County Rural Electric Cooperative. No publicly held corporation owns 10% or more of East Kentucky's stock.

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2024, I caused the foregoing to be electrically filed with the Clerk of the Court by using the Court's CM/ECF system. All registered counsel will be served by the Court's CM/ECF system.

*/s/ S. Chad Meredith*
S. Chad Meredith